**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| ROCOR INTERNATIONAL, INC. | ) | Bankruptcy Court Case No. 02-17658-WV |
| | ) | Chapter 11 |
| Debtor, | ) | |
| | ) | |
| ---------------------------------------------------- | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | District Court Case No. CIV-06-604-M |
| | ) | |
| ROCIN LIQUIDATION ESTATE, | ) | |
| | ) | |
| Appellee, | ) | |

## ORDER

In this appeal from the United States Bankruptcy Court for the Western District of Oklahoma, Appellant, the United States of America (the "IRS"), appeals orders of the Bankruptcy Court (1) requiring the IRS to refund two quarterly tax credits against income tax (the "Refund") and holding that the IRS may not setoff the Refund against a larger, unpaid Heavy Vehicle Highway Use Tax (the "HVHUT")[1] and (2) denying the IRS' motion for reconsideration.

I.      INTRODUCTION

On June 13, 2005, the parties filed "Stipulated Facts For Determination of Disputes Between the Liquidation Estate and the Internal Revenue Service on Briefs".  The stipulations are as follows:

---

[1] The HVHUT is imposed by § 4481 of the Internal Revenue Code on the use of each highway motor vehicle that has a taxable gross weight of at least 55,000 pounds.

1.      Prior to the commencement of the Chapter 11 case, Rocor International ("Rocor") was a corporation engaged in the business of transporting refrigerated freight for customers.

2.      On August 5, 2002, Rocor filed a voluntary petition pursuant to Chapter 11, title 11 of the United States Code, thereby commencing this case.

3.      The Heavy Vehicle Highway Use Tax is an excise tax imposed by Section 4481 of the Internal Revenue Code (26 U.S.C. § 4481) on the use of each highway motor vehicle that has a taxable gross weight of at least 55,000 pounds.

4.      Rocor operated highway motor vehicles with taxable gross weights in excess of 55,000 pounds on and after July 1, 2002, and was therefore liable for the Heavy Vehicle Highway Use Tax.

5.      For highway motor vehicles such as those operated by Rocor, having a taxable gross weight of more than 75,000 pounds, the Heavy Vehicle Highway Use Tax is $550 per truck for the tax year.

6.      On July 1, 2002, the tax year for the Heavy Vehicle Highway Use Tax began and that tax year ended on June 30, 2003. 26 U.S.C. Section 4482.

7.      The return for the Heavy Vehicle Highway Use Tax (Form 2290) is due by August 31 of the tax year.

8.      If a timely return is filed, prior Section 6156 of the Internal Revenue Code (which applies here but is now repealed) permits the Heavy Vehicle Highway Use Tax to be paid in four equal installments: the first installment is due with the return, the second installment is due at the end of the third month of the tax year, the third installment is due at the end of the sixth month of the tax year, and the fourth installment is due at the end of the ninth month of the tax year.

9.      On August 31, 2002, Rocor filed its Heavy Vehicle Highway Use Tax return (Form 2290), reflecting that it was operating 564 highway motor vehicles with taxable gross weights in excess of 75,000 pounds, and therefore had a liability of $550 per truck for a total liability of $310,200.

2

Rocor also paid the first installment of $77,550 with the return. No other payments of the Heavy Vehicle Highway Use Tax were made for that year.

10. On October 8, 2002, the Bankruptcy Court approved a sale of substantially all of Rocor's assets (including its trucks) to New Prime, Inc. That sale closed on October 17, 2002 and Rocor ceased doing business on that date.

11. New Prime, Inc. has not paid any part of the Heavy Vehicle Highway Use Tax on the trucks it acquired from Rocor for the tax year beginning July 1, 2002 and ending June 30, 2003.

12. The contract between New Prime, Inc. and Rocor did not provide that New Prime would pay any portion of the Highway Vehicle Highway Use Tax.

13. In March, 2005, the Estate filed an amended return for the Heavy Vehicle Highway Use Tax return (Form 2290) for the period beginning July 1, 2002 and ending on the date of sale, October 17, 2002, which reported the pro-rated amount of unpaid tax to be $25,848.12. IRS rejected this amended return based on its assertion that the Heavy Vehicle Highway Use Tax could not be pro-rated when trucks are sold for periods prior to October 22, 2004.

14. Rocor paid excise taxes on fuel at the time of purchase (26 U.S.C. §§ 4041, 4081). However, because some of the fuel purchased by Rocor was used for off-highway business use, principally to power the refrigeration units on trucks, Rocor was entitled to a credit for the excise taxes paid on the fuel put to an off-highway business use (26 U.S.C. §§4041(b), 4082(a), 6427(l)).

15. Rocor did not claim a refund for the excise taxes on fuel used for an off-highway business use on its corporate income tax return for the 2002 tax year.

16. The IRS determined that Rocor was entitled to four quarterly credits for 2002 for the excise taxes on fuel used for an off-highway business use. The first two credits issued on April 15, 2002, and July 1, 2002, were refunded to Rocor. The last two credits were retained by the IRS due to the bankruptcy freeze code that was input prior to the

dates the credits became available.  These last two credits were for the third quarter of 2002 in the amount of $76,758.74 and for the fourth quarter of 2002 in the amount of $88,606.89, for a total of $165,365.63. This $165,365.63 amount is the overpayment at issue here.[2]

17.     Rocor had a short tax year for 2002 which began on July 25, 2002 and ended on December 31, 2002, the closing date of the tax year.  The Estate filed Rocor's corporate income tax return for the short year on April 20, 2004.

18.     On September 29, 2002, IRS filed its Motion to Modify Stay to Set Off Tax Overpayment Motion ("Stay Motion"). An order granting the Stay Motion was entered on October 22, 2004, which stated in part, "the stay is modified to allow the Internal Revenue Service to set off debtor's 2002 income tax overpayment of $165,365.63 against debtor's excise tax for the period ending June 30, 2003." The parties now agree that this order should be vacated.

19.     The Estate filed its motion for turnover on October 26, 2004, which seeks turnover of the $165,365.63 refund due on the fuel excise tax for the third and fourth quarters of 2002. IRS has opposed that motion and asserts that it should be able to setoff that refund against Rocor's liability for the Heavy Vehicle Highway Use Tax for the period beginning July 1, 2002 and ending June 30, 2003.

Stipulated Facts for Determination of Dispute Between the Liquidation Estate and Internal Revenue Service on Briefs, United States' Designation of Record and Statement of Issues on Appeal at 8-10.  The IRS presents the following issues for review:

1.     Did the Bankruptcy Court err in denying leave to reply and thereby refusing even to consider the government's particular arguments as to why it was not too late to raise the arguments it first raised in moving to alter or amend, or did it otherwise err in refusing to consider any of the new arguments?

---

[2]Rocor could have filed quarterly claims for refunds of the excise taxes on fuel used for an off-highway business use (26 U.S.C. § 6427(i)(2)), but neither the Estate nor the IRS has any record that those claims were filed.

2.      Did the Bankruptcy Court err in holding that Rocor's HVHUT for the period ending June 30, 2003 accrued on August 1, 2002?  Alternatively, if the HVHUT accrued on August 1, 2002 did the Bankruptcy Court misapprehend the nature of an administrative expense as one related to the post-petition period notwithstanding the date of technical accrual?  As part of this issue, did the Bankruptcy Court err in treating Rocor's post[-]petition election to pay the HVHUT in installments as immaterial to the issue of whether the tax expense should be treated as a post-petition expense?

3.      Did the Bankruptcy Court err in failing to recognize that either 11 U.S.C. § 106(c) or sovereign immunity, or the Judgment Setoff Act (31 U.S.C. § 3728) preserved the IRS' right to offset the fuel tax credits against the HVHUT even if the latter arose pre-petition, given that the tax was not discharged and/or was required to be paid under the confirmed plan?

4.      Did the Bankruptcy Court err in holding that it has subject matter jurisdiction and/or that sovereign immunity was waived for a claim by a post-confirmation liquidation trustee for turnover of a federal tax refund, given the limited jurisdiction of a bankruptcy court after confirmation, and given that 11 U.S.C. § 505(a)(2)(B) limits standing to sue the United States for a tax refund to a bankruptcy "trustee" on behalf of a bankruptcy "estate"?

5.      Did the Bankruptcy Court otherwise err in ordering turnover of a post[-]petition tax refund in derogation of the United States' statutory and common law right of setoff with respect to an HVHUT liability for the period ending June 30, 2003, that the debtor had elected to pay in post-petition installments?

Appellant's Opening Brief at 5-6.

## II.     STANDARD OF REVIEW

On appeal, findings of fact by a Bankruptcy Court are reviewed for clear error and its conclusions of law are reviewed *de novo*.  *In re Hodes*, 402 F.3d 1005, 1008 (10th Cir. 2005); *Pursifull v. Eakin*, 814 F.2d 1501, 1504 (10th Cir. 1987).  Matters within the Bankruptcy Court's

discretion are reviewed for an abuse of discretion. *In re Kelsey*, 270 B.R. 776 (10th Cir. BAP 2001) (citing *Pierce v. Underwood*, 487 U.S. 552, 558 (1988)). A finding of fact is clearly erroneous if it is without factual support in the record or if, after reviewing all of the evidence, the Court is left with the definite and firm conviction that a mistake has been made. *In re Peterson Distrib., Inc.*, 82 F.3d 956, 959 (10th Cir. 1996) (internal citations omitted).

III.   DISCUSSION

    A.   Denial of Leave to File a Reply Brief

The IRS asserts that the Bankruptcy Court abused its discretion by denying its motion to file a reply. The IRS also contends that, in denying its motion for leave to file a reply, the Bankruptcy Court, in essence, refused to consider its "new arguments" raised in support of its motion to alter or amend. The parties agree that this matter is within the Bankruptcy Court's sound discretion and, thus, reviewed for an abuse of discretion. "Under the abuse of discretion standard, the appellate court will not disturb the trial court's decision unless it has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice." *In re S. Med. Arts Cos., Inc.*, 343 B.R. 258, 261 (10th Cir. B.A.P. 2006) (citing *Moothart v. Bell*, 21 F.3d 1499, 1504 (10th Cir.1994)).

In its March 27, 2006 Order, the Bankruptcy Court determined that the arguments contained in the IRS' proposed reply brief were the same as those urged in its brief in support of the original motion.[3] In fact, the Bankruptcy Court determined that most of the IRS' "new arguments" constituted "a belated and blatant attempt by [the] IRS to either refine and expand its legal arguments and factual allegations on issues already determined in the Order or to raise new

---

[3] The IRS' contentions regarding sovereign immunity and subject matter jurisdiction were not urged in the original motion, however, the Bankruptcy Court considered and rejected these contentions. These matters are discussed in detail *infra*.

arguments that could have been, but were not, raised in its prior submissions."  Bankruptcy Court's March 27, 2006 Order at 4.  Having considered the IRS' briefing in support of its motion to alter or amend the turnover order, the Bankruptcy Court determined (1) that no further briefing was necessary on those issues and (2) that the IRS' motion for leave to file a reply should be denied.

Having carefully reviewed the parties' submissions on this issue, the Court finds that the Bankruptcy Court did not abuse its discretion in denying the IRS' motion to file a reply. Specifically, the Court finds that none of the IRS' arguments support a finding that the Bankruptcy Court made a clear error of judgment or exceeded the bounds of permissible choice. As such, the Court finds that the Bankruptcy Court's order should be affirmed on this point.

B.     HVHUT Accrual Date

11 U.S.C. § 553 governs the right of setoff which "allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding the 'absurdity of making A pay B when B owes A.'"  *In re Myers*, 362 F.3d 667, 672 (10th Cir. 2004).  Section 553 grants "a creditor the right 'to offset a mutual debt owing by such creditor to the debtor' so long as both debts arose before commencement of the bankruptcy action and are indeed mutual."  *In re Davidovich*, 901 F.2d 1533, 1537 (10th Cir. 1990) (quoting *In re IML Freight, Inc.*, 65 B.R. 788, 791 (Bankr. D. Utah 1986)).

The parties agree that the refund arose post-petition.  As such, § 553, which is directed at mutual pre-petition debts, does not apply.  Nevertheless, relying on *In re Davidson Lumber Sales, Inc.*, 66 F.3d 1560, 1569 (10th Cir. 1995), the parties agree that if the HVHUT also arose post-petition, setoff might be appropriate.  *In re Davidson Lumber Sales, Inc.*, 66 F.3d 1560, 1569 (10th Cir. 1995) ("[T]he best statement of modern law and practice is that, if the relevant

7

claim and debt[, in this case the refund and the HVHUT,] constitute mutual obligations within the meaning of § 553, a right of setoff should be recognized in bankruptcy.").

The bankruptcy petition was filed on August 5, 2002. A tax liability accrues or becomes payable in this context when it becomes "fixed and calculable", which is generally at a time before the last permissible day to pay the tax. *See In re Dixon*, 218 B.R. 150, 152 (10th Cir. BAP 1998). The IRS asserts that the HVHUT accrued at the close of the tax year, on June 30, 2003, and thus arose post-petition, and that the Bankruptcy Court erred in finding that the HVHUT accrued August 1, 2002.

A person is liable for the HVHUT with respect to the use of a highway motor vehicle in a taxable period if the vehicle is registered in the person's name at the time of the first use of the vehicle in the taxable period. 26 C.F.R. § 41.4481-2. A return must be filed for the HVHUT on the last day of the month following the month in which a person becomes liable. 26 C.F.R. §§ 41.6071(a)-1 and 41.6151(a)-1. Thus, the return for the HVHUT on vehicles owned and used in July, 2002 was due on August 31, 2002, which was the last day of the month following the month in which the debtor became liable. In order to calculate the HVHUT, the debtor was required to multiply the number of qualifying vehicles it owned and used in July, 2002 by the amount of the tax. The number of vehicles owned and used by the debtor during the month of July, 2002 was determinable at the beginning of the month following July, 2002. As such, the Court finds that the debtor's HVHUT liability was "fixed and calculable" and, thus, accrued on August 1, 2002. Since the date the HVHUT accrued preceded the August 5, 2002 filing of the bankruptcy petition, the Court finds that it arose pre-petition. Accordingly, the Court finds that

the HVHUT could not be setoff against the tax refund and that the Bankruptcy Court's ruling on this issue should be affirmed.[4]

The IRS further contends that the Bankruptcy Court erred in treating the debtor's election to pay the HVHUT in installments as immaterial to the issue of whether the HVHUT should be treated as pre- or post-petition.  Having reviewed the parties' submissions and the relevant statutes and regulations, including 26 C.F.R. § 41.6156-1, which provides for the payment of the HVHUT in installments, the Court agrees that this is immaterial to the determination of when the liability accrued, which is the basis for determining whether the tax liability arose pre- or post-petition.  Accordingly, the Court finds that the Bankruptcy Court did not err in treating how the debtor elected to pay the tax owed as immaterial to when the tax liability arose and that, therefore, the Bankruptcy Court's order in that regard should be affirmed.

C.      Setoff Under § 106(c)

The IRS contends that the Bankruptcy Court erred by failing to recognize its setoff rights pursuant to 11 U.S.C. § 106(c).[5]  A careful reading of that provision reveals that it protects a *debtor's* right to setoff and cannot be used in the manner suggested by the IRS.  As such, the Court finds that the Bankruptcy Court did not err in denying the IRS' request under that provision and that, therefore, the Bankruptcy Court's decision should be affirmed on this issue.

---

[4] The Bankruptcy Code does not create a right of setoff.  *Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 18 (1995).  Rather, it preserves in bankruptcy whatever right of setoff otherwise exists.  *Id.*  As such, the IRS' contention that the Bankruptcy Court erred in ordering turnover of the tax refund in derogation of the IRS' statutory and common law right of setoff does not require any additional analysis, and the Bankruptcy Court did not err with respect thereto.  Likewise, the Bankruptcy Court did not err with respect to the IRS' setoff rights under 31 U.S.C. § 3728.

[5] Section 106(c) provides, "[n]otwithstanding any assertion of sovereign immunity by a governmental unit, there shall be offset against a claim of a governmental unit any claim against such governmental unit that is property of the estate."  11 U.S.C. § 106(c).

D.      Sovereign Immunity

The United States is immune from suit except as it has consented to be sued.  *In re Talbot*, 124 F.3d 1201, 1205 (10th Cir. 1997) (citing *United States v. Testan*, 424 U.S. 392, 399 (1976)).  "Thus, if the United States has not consented to be sued, courts have no jurisdiction to either restrain the government from acting or to compel it to act.'" *In re Talbot*, 124 F.3d at 1205 (quoting *United States v. Murdock Mach & Eng'g Co.*, 81 F.3d 922, 930 (10th Cir. 1996)).  Furthermore, questions of sovereign immunity may be raised at any stage in the proceeding.  *In re Talbot*, 124 F.3d at 1205.  "The United States consents to be sued only when Congress *unequivocally expresses in statutory text its intention to waive the United States' sovereign* immunity." *Id.*

1.      Does Sovereign Immunity Preserve the IRS' right to setoff?

Section 106(a) provides a list of the specific Bankruptcy Code provisions with respect to which the United States' sovereign immunity is waived.  It provides, in pertinent part:

> Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:
>
> (1)     Sections 105, 106, 107, 108, 303, 346, 362, 363, 364, 365, 366, 502, 503, 505, 506, 510, 522, 523, 524, 525, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552, 553, 722, 724, 726, 728, 744, 749, 764, 901, 922, 926, 928, 929, 944, 1107, 1141, 1142, 1143, 1146, 1201, 1203, 1205, 1206, 1227, 1231, 1301, 1303, 1305, and 1327 of this title.
>
> (2)     The court may hear and determine any issue arising with respect to the application of such sections to governmental units.

11 U.S.C. § 106(a).  Further, §106(a)(3) specifically authorizes the Bankruptcy Court to enter an order against a governmental unit for a monetary recovery.  Turnover, such as that sought here,

10

is governed by § 542, which is one of the enumerated provisions.[6]  Having carefully reviewed the parties' submissions and the relevant statutory provisions, the Court finds that the IRS' sovereign immunity has been unequivocally waived.   As such, the Court finds that the Bankruptcy Court's order on this issue should be affirmed.

2.      Sovereign Immunity as to Tax Refund Proceedings Specifically

The IRS contends that the waiver of sovereign immunity in proceedings to determine a debtor's right to a refund under 11 U.S.C. § 505 is more limited than that recognized by the Bankruptcy Court and that any such right cannot be determined in any court unless and until an administrative claim for a refund has been presented to the IRS.  The IRS further contends that, since any such claimed refund would be offset against any other liability owed by the taxpayer, the IRS' right to setoff is preserved.   The Court, however, finds this argument unavailing because this is not a suit to determine the debtor's right to a tax refund.  Specifically, the Court finds that in this case the Bankruptcy Court was not called upon to determine the debtor's entitlement to a refund nor is the amount of the refund in dispute.  In fact, the stipulated facts filed by the parties' in the Bankruptcy Court provide: "the Debtor was entitled to a credit for the excise taxes paid on the fuel that was put to an off-highway business use."  Stipulated Facts for Determination of Disputes Between the Liquidation Estate and Internal Revenue Service on Briefs, United States' Designation of Record and Statement of Issues on Appeal at ¶ 14. Accordingly, having reviewed the parties' submissions and the relevant statutes and case law, the Court finds that the Bankruptcy Court did not err in failing to recognize the IRS' sovereign immunity under § 505.

---

[6]Also listed in section 106(a)(1), and relevant hereto, are sections 362, 505 and 1142.

E.       Subject Matter Jurisdiction

Finally, the IRS contends that the Bankruptcy Court erred in holding that it had subject matter jurisdiction despite its limited post-confirmation jurisdiction.   The Bankruptcy Court determined that it had subject matter jurisdiction under 28 U.S.C. § 157(b) which gives the Bankruptcy Court jurisdiction over all "core" proceedings.   Relevant to the instant case, the following matters are included as "core" proceedings in 28 U.S.C. § 157(b)(2): (1) counterclaims filed by the estate against persons filing claims against the estate, (2) orders to turn over property of the estate, and (3) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor relationship.   Having reviewed this matter carefully, the Court finds that this matter is a "core" proceeding within the meaning of § 157.   Accordingly, the Court finds that the Bankruptcy Court had subject matter jurisdiction to decide the instant dispute.   As such, the Court find that the Bankruptcy Court's Order on this issue should be affirmed.

IV.    CONCLUSION

For the reasons set forth in detail above, the Court finds that the Bankruptcy Court's decisions should be, and hereby are, AFFIRMED.

**IT IS SO ORDERED this 21st day of June, 2007.**

VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE